# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

**JERRY NICHOLAS, SR.,** individually
and as parent and next friend of
**CHRISTOPHER NICHOLAS,**
**PRINCESS NICHOLAS,**
**JERRY NICHOLAS JR. (deceased),**
**PRENTICE NICHOLAS,**
**CAROLYN NICHOLAS, and**
**WENDY NICHOLAS,**

          Plaintiffs,

             v.

**CITY OF CHICAGO,** a municipal corporation**;**
**COOK COUNTY, ILLINOIS,** a body politic**;**
 **ILLINOIS DEPARTMENT OF CHILDREN
AND FAMILY SERVICES;**
**GARY M. OLSON JR.,** individually**;**
**MATTHEW C. MALLOY,** individually**;**
**THEARS JUDKINS,** individually**;**
**PATRICK T. MURPHY,** in his
official capacity as Cook County Public Guardian**;**
**KURT ALEXANDER MULLER,** individually**;**
and **UNKNOWN OFFICERS AND
EMPLOYEES OF THE CHICAGO
POLICE DEPARTMENT, DCFS, AND
COOK COUNTY PUBLIC GUARDIAN'S OFFICE,**

          Defendants.

Case No:_____

_____/

## VERIFIED COMPLAINT FOR DAMAGES UNDER 42 U.S.C. § 1983, DEMAND FOR JURY TRIAL

    Plaintiff JERRY NICHOLAS, SR. ("Plaintiff"), individually and as parent and next friend of his six children, by and through his undersigned counsel, brings this civil rights action pursuant to 42 U.S.C. § 1983 and the Fourth, Sixth, and Fourteenth Amendments to

1

the United States Constitution, and alleges as follows upon personal knowledge, information, and belief:

## INTRODUCTION

1.      This is a civil rights action arising from the unlawful, warrantless, and fraudulent seizure of six children: Christopher Nicholas (DOB 9/18/85), Princess Nicholas (DOB 12/9/86), Jerry Nicholas Jr. (DOB 12/9/86, now deceased), Prentice Nicholas (DOB 4/12/88), Carolyn Nicholas (DOB 4/12/88), and Wendy Nicholas (DOB 12/21/91) from their father, Jerry Nicholas, Sr., on July 27, 1993, at 416 West 57th Place, Chicago, Illinois 60621, and from Nathan Hale Elementary School, 6140 South Melvina Avenue, Chicago, Illinois 60638.

2.      The Defendants executed this seizure using fabricated police authority. The arrest reports bear the name "Gary Olson Jr." and Chicago Police Department Star No. 11778 — a badge number that was not issued to any officer until January 20, 1998, nearly five years after the seizure.

3.      The Defendants executed this seizure despite the fact that the juvenile warrants authorizing the removal had been explicitly **quashed** by Cook County Circuit Court Judge Susan G. Fleming on July 27, 1993, as confirmed by the court's own PASSPORT computer system.

4.      Following this unlawful seizure, the Defendants placed all six children including an 18-month-old infant in the DCFS Emergency Services Center at 810 West Montrose Avenue, Chicago into a facility.  At that time, the facility was under a **federal court consent decree prohibiting the housing of children** due to dangerous and overcrowded conditions.

5.      On that very first day in state custody, July 27, 1993, six-year-old Princess Nicholas suffered vaginal and rectal penetration. Medical evidence of this assault was documented by Dr. Heriberto Torres at Grant Hospital on August 2, 1993. DCFS possessed this evidence

from that date forward and **withheld it from the courts, the parents, and the media for thirty-one years**, until December 3, 2024.

6. Additionally, Wendy Nicholas was sexually abused while in state custody, resulting in criminal charges of Aggravated Criminal Sexual Abuse against one Oliver Lake (Cook County Case No. 08C6-62099, filed 2008).

7. Jerry Nicholas Jr., who was removed from the home at age six, was found dead at the Grand Regency of Jackson Park facility on January 17, 2021. The case remains unsolved.

8. The Defendants' actions destroyed an intact, functioning family. The children remained in state custody for up to sixteen years. The parents were denied all contact. The Plaintiff was forced to trial without legal representation. The constitutional violations were concealed through fabricated records, withheld evidence, and institutional silence for over three decades.

## JURISDICTION AND VENUE

9. This action is brought pursuant to 42 U.S.C. § 1983 for violations of the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution.

10. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

11. Supplemental jurisdiction over state-law claims is conferred by 28 U.S.C. § 1367.

12. Venue is proper in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(b) because all events giving rise to these claims occurred within this judicial district.

## PARTIES

13.     Plaintiff **JERRY NICHOLAS, SR.** is a resident of Cook County, Illinois, and the biological father of the six minor children who were unlawfully seized. He brings this action individually and as parent and next friend of his children.

14.     Defendant **CITY OF CHICAGO** is a municipal corporation organized under the laws of the State of Illinois, which operates the Chicago Police Department ("CPD"). The City is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for the policies, practices, and customs that caused the constitutional violations alleged herein.

15.     Defendant **COOK COUNTY, ILLINOIS** is a body politic organized under the laws of the State of Illinois, which operates the Cook County Public Guardian's Office and the Cook County State's Attorney's Juvenile Division.

16.     Defendant **ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES ("DCFS")** is an agency of the State of Illinois responsible for the investigation of child abuse and neglect allegations and the custody of children removed from their homes.

17.     Defendant **GARY M. OLSON JR.** is an individual whose name and future badge number (Star No. 11778) appear on the arrest reports used to execute the seizure of the Nicholas children on July 27, 1993. According to official CPD employment records (OpenOversight ID 19855, Unique Internal Identifier 109265), Olson Jr. was born in 1971, was not employed by CPD until August 4, 1997, and was not issued Star No. 11778 until January 20, 1998. He is sued in his individual capacity.

18.     Defendant **MATTHEW C. MALLOY** was, upon information and belief, a Sergeant with the Chicago Police Department who participated in the physical seizure of the Nicholas children on July 27, 1993. His signature appears on arrest reports for the children. He is sued in his individual capacity.

4

19.     Defendant **THEARS JUDKINS** was a Child Protection Investigator employed by DCFS who initiated the *ex parte* hearing on July 26, 1993, admitted on the record that he had no affidavit of service, authorized the placement of the children at 810 W. Montrose, and listed himself as "FRIEND" rather than DCFS caseworker on the Grant Hospital admission record for Princess Nicholas. He is sued in his individual capacity.

20.     Defendant **PATRICK T. MURPHY** was the Cook County Public Guardian whose office filed a lawsuit against DCFS on July 27, 1993, regarding the dangerous conditions at 810 W. Montrose, yet simultaneously allowed the Nicholas children to be placed there, and whose office subsequently withheld evidence of the sexual assault of Princess Nicholas from the courts and the parents. He is sued in his official capacity.

21.     Defendant **KURT ALEXANDER MULLER** was a private attorney hired by Plaintiff on March 15, 1996, who withdrew on March 10, 1998, without explanation, and who failed to investigate the case, failed to obtain or present the evidence of the quashed warrants, and failed to challenge the fraudulent police authority during his representation. He is sued in his individual capacity.

22.     Defendants **UNKNOWN OFFICERS AND EMPLOYEES** are individuals employed by CPD, DCFS, and the Cook County Public Guardian's Office whose identities will be revealed through discovery, who participated in the unlawful seizure, the concealment of evidence, and the continued deprivation of Plaintiff's constitutional rights.

23.     At all times relevant hereto, the individual Defendants acted under color of state law and within the scope of their employment, duties, or authority.

## TOLLING OF THE STATUTE OF LIMITATIONS

24.     Plaintiff acknowledges that the primary events giving rise to this action occurred in 1993. However, the statute of limitations has been tolled by operation of the following doctrines, and this action is timely filed.

### A. Fraudulent Concealment (735 ILCS 5/13-215)

25.     The Defendants took deliberate, affirmative steps to conceal their unlawful actions from Plaintiff, thereby preventing him from discovering the full scope of the constitutional violations:

   a. **The fabricated badge number.** The arrest reports for the Nicholas children bear Star No. 11778, assigned to "Gary Olson Jr." This badge number was not issued until January 20, 1998 which was nearly five years after it appeared on the 1993 arrest reports. By using a badge number that did not yet exist, the Defendants ensured that any contemporaneous inquiry into the arresting officer's identity would fail. Plaintiff could not have discovered this fraud until police employment records became publicly accessible through databases such as OpenOversight and the Citizens Police Data Project.

   b. **The withheld medical evidence.** DCFS possessed documentary evidence, specifically, the August 2, 1993 interview notes of Grant Hospital social worker Lesley Robertson stating "there is medical evidence of vaginal and rectal penetration Princess", from the date of the assault. This evidence was withheld from the courts, from Plaintiff, from Plaintiff's attorneys, and from the media for thirty-one years. It was not disclosed to Plaintiff until December 3, 2024, when DCFS employee Gerald Lakomiak provided Plaintiff with a disc containing the complete "NICHOLAS FULL FILE" (9,286 pages).

c. **The concealment of Defendant Judkins' role.** Defendant Judkins listed himself as "FRIEND" on the Grant Hospital admission record for Princess Nicholas, rather than identifying himself as a DCFS caseworker, thereby concealing the state's involvement in the child's placement and subsequent assault.

d. **The withheld trial transcripts.** The transcript of the July 26-27, 1993 hearings was not transcribed until April 5, 1999 which was six years after the events, and was not made available to Plaintiff for approximately twenty years thereafter.

26.     Under 735 ILCS 5/13-215, where a person liable to an action fraudulently conceals the cause of action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled thereto discovers that he or she has such cause of action.

27.     Plaintiff discovered the full scope of the fraudulent concealment on December 3, 2024. This action is therefore timely if filed within five years of that date, i.e., by December 3, 2029.

## B. Discovery Rule

28.     Under the discovery rule applicable to Section 1983 claims in the Seventh Circuit, a cause of action accrues when the plaintiff knows or should have known of his injury. *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993).

29.     Plaintiff could not have known of the fabricated badge number until police employment records became publicly available. The Civilian Office of Police Accountability ("COPA") classified Plaintiff's complaint (CR 20230001210, filed March 22, 2023) as "Criminal Misconduct — Police Impersonator," confirming that the badge fraud was not

7

discoverable through ordinary diligence prior to the availability of public employment databases.

30. Plaintiff could not have known of the medical evidence of Princess's sexual assault until DCFS released the disc on December 3, 2024.

31. Applying the discovery rule, Plaintiff's claims accrued no earlier than March 2023 (badge fraud discovery) or December 3, 2024 (medical evidence discovery). Under the two-year statute of limitations for Section 1983 claims in Illinois, this action is timely if filed by December 3, 2026.

## C. Continuing Violation Doctrine

32. The unlawful separation of the Nicholas family was not a discrete act but a continuing violation. The Defendants maintained the children in state custody through ongoing affirmative acts including the withholding of evidence, the denial of contact, and the obstruction of reunification. This occurred until the last child, Wendy Nicholas, was returned to Plaintiff on February 15, 2009, following Judge Kathleen McGury's discovery of adoption and birth certificate fraud.

33. Under the continuing violation doctrine, the statute of limitations does not begin to run until the last act in furtherance of the violation. The last affirmative act of concealment occurred on December 3, 2024, when DCFS finally released the withheld evidence.

## D. Equitable Tolling

34. Plaintiff has diligently pursued his rights through every available channel, including complaints to COPA, Internal Affairs, the Mayor's Office, the Cook County State's Attorney, and the Illinois General Assembly. Illinois State Representative Jed Davis (75th District) acknowledged the extraordinary nature of Plaintiff's case in a letter dated July 10, 2024, to

DCFS Deputy Chief of Staff Asia Gentry, stating that "the breadth of his story is outside the scope of the General Assembly."

35. Equitable tolling is warranted where, as here, a plaintiff has been prevented from asserting his rights by the extraordinary circumstances of institutional concealment and the destruction of evidence.

## FACTUAL ALLEGATIONS

### A. The Nicholas Family Before July 1993

36. In 1993, Jerry Nicholas, Sr. resided with his wife Joanne Nicholas and their six children at 416 West 57th Place, Chicago, Illinois 60621. The family had lived at this address since approximately February 1992.

37. The children attended Nathan Hale Elementary School, 6140 South Melvina Avenue, Chicago. Principal Linda McCarthy confirmed in a letter dated March 24, 1994, that Princess and Jerry Jr. "made steady progress" during the 1992-1993 school year, that both children attended the extended school year program, and that "Mr. Nicholas was cooperative with the classroom teachers. When the children missed the school bus, Mr. Nicholas drove the children to school."

38. Principal McCarthy further confirmed that **Princess attended school on both July 26 and July 27, 1993** which were the exact dates of the ex parte hearing and the seizure. Thus demonstrating that the children were in a normal, functioning educational environment at the precise time the state was secretly taking custody.

### B. The Ex Parte Hearing  (July 26, 1993)

39. On July 26, 1993, Defendant Judkins initiated an *ex parte* hearing in the Juvenile Justice Division of the Circuit Court of Cook County before Judge Susan G. Fleming (Case Nos. 93 JA 3480 through 93 JA 3485).

9

40. The official court transcript of July 26, 1993, confirms that the Guardian ad Litem, Ms. Robbins, stated on the record: **"There are no minors or parents present."**

41. When asked whether he had an affidavit of service, Defendant Judkins admitted on the record: **"No."** He stated only that he had "informed them verbally."

42. The factual basis presented to the court for the removal was not physical abuse, sexual abuse, or neglect of the children. Rather, Defendant Judkins alleged that Jerry Nicholas had been "angry" in DCFS offices and had tracked a caseworker to his or her home. No medical evidence, no physical examination, and no affidavit from any witness was presented.

43. Despite the absence of the parents, the absence of the children, the absence of proper notice, and the absence of any evidence of harm to the children, Judge Fleming issued Juvenile Arrest Warrants for all six children and appointed Gary T. Morgan as temporary custodian.

44. The State's Attorney was not notified of the hearing until 9:00 PM that evening — seven hours after the hearing concluded.

## C. The Warrant Quashed  (July 27, 1993)

45. On July 27, 1993, the court's own PASSPORT computer system (Juvenile Child Protection database) recorded the following entry for each of the Nicholas children:

> *"07/27/1993 JUVENILE WARRANT QUASHED, FLEMING, SUSAN G."*

46. This entry appears in the official court records for Case No. 93JA03484 (Wendy Nicholas), Case No. 93JA03485 (Princess Nicholas), and upon information and belief, for all six cases (93 JA 3480-3485).

47. The quashing of the warrants meant that no legal authority existed for the seizure of the children on July 27, 1993. Any removal executed after the warrants were quashed was without legal justification.

**D. The Unlawful Seizure  (July 27, 1993)**

48.     Despite the warrants being quashed, the Defendants proceeded to physically seize all six children on July 27, 1993.

49.     Princess Nicholas (age 6) and her twin brother Jerry Jr. were removed directly from Nathan Hale Elementary School by two individuals who were not sworn Chicago police officers. These strangers entered the school, identified the children, and removed them without proper authority.

50.     Wendy Nicholas (age 18 months) was seized from the family home at 416 West 57th Place. According to Plaintiff, Defendant Olson Jr. entered the home and took the infant at gunpoint.

51.     The arrest reports generated for this seizure list the arresting officer as "Gary Olson Jr." using Star No. 11778. On the arrest report for Wendy Nicholas, both Star No. 11778 and Star No. 184 appear.  The former belonging to *an officer not yet employed*, and the latter belonging to a different Gary Olson Sr. (born 1943, appointed 1965, Unit 184).

52.     Official CPD employment records confirm:
   • Gary M. Olson Jr. (born 1971) was not employed by CPD until August 4, 1997.
   • Star No. 11778 was not assigned to him until January 20, 1998.
   • In July 1993, Olson Jr. was approximately 22 years old and had no law enforcement authority whatsoever.

53.     Defendant Matthew C. Malloy's signature also appears on the arrest reports. Upon information and belief, Malloy participated in the physical seizure of the children.

54.     The Civilian Office of Police Accountability ("COPA") received Plaintiff's complaint regarding this matter (CR 20230001210) on March 22, 2023, and classified it as "Criminal Misconduct — Police Impersonator" for the incident at "4XX W. 57th Pl" on July 27, 1993. COPA closed the investigation in just twelve days, on April 3, 2023, without explanation.

### E. Placement in a Prohibited Facility (July 27, 1993)

55. Following the unlawful seizure, Defendant Judkins authorized the placement of all six children at the DCFS Emergency Services Center located at 810 West Montrose Avenue, Chicago, Illinois. The Placement/Payment Authorization Forms signed by Judkins confirm placement at "810 MONTROSE" at 5:00 PM on July 27, 1993.

56. At the time of this placement, the facility at 810 W. Montrose was under a federal court consent decree prohibiting the housing of children due to severe overcrowding, dangerous conditions, and documented abuse.

57. The same day on July 27, 1993, the Cook County Public Guardian, Patrick T. Murphy, filed a lawsuit against DCFS in Cook County Circuit Court seeking to prohibit DCFS from housing children at 810 W. Montrose. The Chicago Tribune reported this lawsuit on July 27, 1993, under the headline "DCFS IS SUED FOR HOUSING KIDS IN ITS OFFICES."

58. Despite this lawsuit, despite the federal consent decree, and despite the Public Guardian's own knowledge of the dangerous conditions, the Nicholas children were placed at 810 W. Montrose that same day.

### F. The Sexual Assault of Princess Nicholas (July 27, 1993)

59. On or about July 27, 1993, the very first day in state custody, six-year-old Princess Nicholas was sexually assaulted at the 810 W. Montrose facility, suffering vaginal and rectal penetration.

60. On August 2, 1993, Grant Hospital social worker **Lesley Robertson** reported to DCFS investigator the following, as documented in DCFS Child Abuse/Neglect Investigation Interview Notes (SCR No. 536843B):

*"Inf all 6 of the children are at Grant and ready for release tomorrow. There is medical evidence of vaginal and rectal penetration Princess. All the children have been interviewed at the hospital. Will send notes to CPT."*

61. Dr. Heriberto Torres at Grant Hospital conducted the medical examination. A subsequent DCFS incident report states:

*"PRINCESS NICHOLAS WAS EXAMINED AT GRANT HOSPITAL BY M.D. HERIBERTO TORRES. GENITAL EXAM WAS CONSISTENT FOR VAGINAL TRAUMA. PRINCESS ALSO HAD A CHILD DEVELOPMENT INTERVIEW AT GRANT HOSPITAL GIVEN BY K. ALDEN-CDS. PRINCESS STATED THAT SOMEBODY HAD TOUCHED HER PRIVATE (VAGINA). HOWEVER SHE DID NOT FEEL SAFE DISCLOSING WHO HAD TOUCHED HER."*

62. DCFS possessed this medical evidence from August 2, 1993. It was never disclosed to the courts, to Plaintiff, to Plaintiff's attorneys, or to the media. It remained concealed within the DCFS file for **thirty-one years**, until the disc was released on December 3, 2024.

63. The court order issued on July 27, 1993, directed DCFS to arrange for hospitalization at La Rabida Hospital**.** Instead, the children were taken to Grant Hospital, in violation of the court's own order.

## G. The Sexual Abuse of Wendy Nicholas in Foster Care

64. Wendy Nicholas, who was 18 months old at the time of her removal, was also sexually abused while in state custody.

65. In 2008, the Cook County State's Attorney filed criminal charges against **Oliver Lake** for **Aggravated Criminal Sexual Abuse** of Wendy Nicholas (Case No. 08C6-62099).

66. On March 17, 2009, the Cook County State's Attorney's Office (under State's Attorney Anita Alvarez) sent a Victim Witness Assistance letter to "Ms. Wendy Nicholas, 403 W. 57th Street, Chicago, IL 60621," informing her of a pre-trial status hearing on April 16, 2009, before Judge Douglas Simpson in Court Room 106.

13

67. The criminal case against Oliver Lake confirms that Wendy Nicholas was sexually abused while in the custody of the state. The same state that removed her from a safe home based on fabricated authority and a quashed warrant.

## H. The Death of Jerry Nicholas Jr.

68. Jerry Nicholas Jr. was removed from his home at age six. After years in state custody, he was found dead at the Grand Regency of Jackson Park facility in Chicago on January 17, 2021. The case remains unsolved.

69. Jerry Jr.'s death is a direct and foreseeable consequence of the Defendants' unlawful removal of the children from a stable home and their placement into a system that failed to protect them.

## I. Denial of Counsel at Trial  (September 1998)

70. Plaintiff hired private attorney Kurt Alexander Muller on March 15, 1996, to represent the family. Muller withdrew on March 10, 1998, without explanation and without having investigated the case, obtained the quashed warrant records, or challenged the fraudulent police authority.

71. Following Muller's withdrawal, no Public Defender was appointed to represent Plaintiff or his wide in the parent's case. The court's PASSPORT system shows that on August 11, 1998, a Public Defender filed a " MOTION TO WITHDRAWAL AS COUNSEL" in connection with the docket of Plaintiff's minor daughter Wendy Nicholas at 26th and California, the criminal building, as though the child were a criminal defendant rather than a dependent minor.  At no point was Plaintiff provided substitute counsel for the September 1998 trial.

72. The trial on the State's petition proceeded on September 8, 9, 10, and 11, 1998. Plaintiff and his wife were forced to proceed without any legal representation whatsoever.

14

Neither a Public Defender no any other counsel represented the parents at any point during the four-day trial. The court permitted the State to terminate Plaintiff's parental rights while he stood unrepresented, unable to cross-examine witnesses, present evidence, or assert legal objections.

73. Plaintiff's notarized affidavit, statements of facts, and discovery interrogatories were never presented to the court because he had no attorney to file them.

## J. The Cook County Public Guardian's Refusal to Disclose

74. Upon information and belief, the Cook County Public Guardian's Office filed a lawsuit on behalf of the Nicholas children on July 27, 1993, citing the federal consent decree prohibiting placement at 810 W. Montrose.

75. The Public Guardian's Office has refused to turn over this lawsuit or any records related to it to Plaintiff.

76. The Public Guardian's Office also withheld evidence of the sexual assault of Princess Nicholas from the courts, from Plaintiff, and from Plaintiff's attorneys throughout the entirety of the juvenile proceedings.

## K. Sixteen Years Without Contact

77. As a direct result of the Defendants' compounding constitutional violations, the six Nicholas children remained in foster care for up to sixteen years.

78. During this period, Plaintiff was stripped of all rights to have contact with his children. No court order justified this complete severance of the parent-child relationship.

79. The last child, Wendy Nicholas, was not returned to Plaintiff until February 15, 2009, after Judge Kathleen McGury discovered evidence of adoption and birth certificate fraud.

**L. The December 2024 Disclosure**

80. On December 3, 2024, DCFS employee Gerald Lakomiak provided Plaintiff with a disc containing the complete "NICHOLAS FULL FILE" which was 9,286 pages of documents that had been withheld from Plaintiff for over thirty years.

81. This disc contained, among other things, the August 2, 1993 interview notes documenting the medical evidence of Princess Nicholas's sexual assault — evidence that DCFS had concealed since 1993.

82. The release of this disc constitutes the triggering event for the discovery of the full scope of the Defendants' constitutional violations.

## CAUSES OF ACTION

### COUNT I:
**42 U.S.C. § 1983**
**Fourth Amendment (Unreasonable Seizure of the Children)**
*(Against Defendants Olson Jr., Malloy, Judkins, and Unknown Officers)*

83. Plaintiff incorporates all preceding paragraphs.

84. The Fourth Amendment, applicable to the states through the Fourteenth Amendment, prohibits unreasonable seizures of persons, including the seizure of children from their parents.

85. On July 27, 1993, the Defendants physically seized the six Nicholas children after the juvenile warrants authorizing such seizure had been quashed by Judge Fleming.

86. The seizure was executed without probable cause, without exigent circumstances, without a valid warrant, and by individuals using fabricated police authority (a badge number not yet in existence).

87.     The seizure of Princess Nicholas and her twin brother from Nathan Hale Elementary School was carried out by unsworn individuals who were strangers to the children and the school.

88.     As a direct and proximate result of this unreasonable seizure, Plaintiff and his children suffered severe and irreparable harm, including but not limited to the sexual assault of Princess Nicholas on the day of seizure, the sexual abuse of Wendy Nicholas in foster care, the death of Jerry Nicholas Jr., and the destruction of the family unit for sixteen years.

**COUNT II:**
**42 U.S.C. § 1983**
**Fourteenth Amendment Substantive Due Process (Right to Familial Association)**
*(Against All Defendants)*

89.     Plaintiff incorporates all preceding paragraphs.

90.     The Fourteenth Amendment protects the fundamental liberty interest of parents in the care, custody, and management of their children. *Troxel v. Granville*, 530 U.S. 57 (2000); *Hernandez v. Foster*, 657 F.3d 463 (7th Cir. 2011).

91.     The Defendants' actions in severing the familial bond between Plaintiff and his six children was based on fabricated police authority, a quashed warrant, an *ex parte* hearing without notice, and the subsequent concealment of evidence "shocks the conscience" and violates substantive due process.

92.     The Defendants maintained this separation for up to sixteen years through ongoing affirmative acts of concealment, obstruction, and denial of contact, compounding the initial violation into a decades-long deprivation of Plaintiff's most fundamental constitutional right.

**COUNT III:**
**42 U.S.C. § 1983**
**Fourteenth Amendment Procedural Due Process**
*(Against All Defendants)*

93.     Plaintiff incorporates all preceding paragraphs.

17

94. The Fourteenth Amendment requires that before the state may deprive a parent of custody of his children, the parent must receive adequate notice and a meaningful opportunity to be heard.

95. The Defendants deprived Plaintiff of his liberty interest in his children without adequate procedural safeguards, specifically:

- Proceeding *ex parte* on July 26, 1993, without Plaintiff present;
- Failing to provide proper notice (Defendant Judkins admitted "No" affidavit of service);
- Executing the seizure on a voided (quashed) warrant;
- Failing to bring the children before a judge within 48 hours as required by the warrant;
- Forcing Plaintiff to proceed to trial in September 1998 without legal representation after both his private attorney and the Public Defender withdrew;
- Withholding exculpatory evidence (the school principal's letter, the quashed warrant records) from Plaintiff and the court throughout the proceedings.

### COUNT IV:
### 42 U.S.C. § 1983
### State-Created Danger (Fourteenth Amendment)
*(Against Defendants Judkins, DCFS, and the City of Chicago)*

96. Plaintiff incorporates all preceding paragraphs.

97. Under the state-created danger doctrine, a state actor may be held liable under the Fourteenth Amendment where the state's affirmative acts place a person in a position of danger that the person would not otherwise have faced. *DeShaney v. Winnebago County*, 489 U.S. 189 (1989); *D.S. v. E. Porter County School Corp.*, 799 F.3d 793 (7th Cir. 2015).

98. By removing the six Nicholas children from a safe, functioning home environment and placing them in the DCFS Emergency Services Center at 810 W. Montrose (a facility under federal court order prohibiting the housing of children), the Defendants affirmatively created a danger that the children would not otherwise have faced.

99. This danger was not speculative. On the very first day of placement, Princess Nicholas (age 6) suffered vaginal and rectal penetration. The Defendants knew or should

have known of the dangerous conditions at 810 W. Montrose and indeed, the Public Guardian filed a lawsuit about those very conditions on the same day.

100.    Additionally, by maintaining the children in foster care for sixteen years, the Defendants created the conditions that led to the sexual abuse of Wendy Nicholas by Oliver Lake and the ultimate death of Jerry Nicholas Jr.

**COUNT V:**
**42 U.S.C. § 1983**
**Denial of Access to Courts / Spoliation of Evidence**
*(Against Defendants DCFS, Cook County, and the Public Guardian's Office)*

101.    Plaintiff incorporates all preceding paragraphs.

102.    The First and Fourteenth Amendments guarantee the right of access to the courts. This right is violated when state actors conceal evidence necessary for a plaintiff to vindicate his constitutional rights.

103.    The Defendants withheld the following evidence from Plaintiff and the courts:

- Medical evidence of Princess Nicholas's sexual assault (documented August 2, 1993; withheld until December 3, 2024);
- The complete DCFS investigative file (9,286 pages; withheld until December 3, 2024);
- The lawsuit filed by the Public Guardian on July 27, 1993 (still withheld);
- Court transcripts (not transcribed until 1999; not provided to Plaintiff for approximately twenty years).

104.    This concealment prevented Plaintiff from bringing timely claims, from challenging the removal in the juvenile proceedings, and from obtaining the return of his children.

**COUNT VI:**
**42 U.S.C. § 1983**
**Monell Liability (Municipal Policy and Custom)**
*(Against the City of Chicago, Cook County, and DCFS)*

105.    Plaintiff incorporates all preceding paragraphs.

106. The constitutional violations suffered by Plaintiff were not the result of isolated misconduct but were the direct and foreseeable result of the policies, practices, and customs of the City of Chicago, Cook County, and DCFS, including but not limited to:

  a. The systemic practice of housing children in the prohibited facility at 810 W. Montrose despite the federal consent decree, as documented by the Chicago Tribune on July 27, 1993 (reporting that "as many as 46 children have been living out of the center in recent weeks");

  b. The systemic failure to verify the identity and authority of individuals executing juvenile warrants, enabling unsworn persons to seize children using fabricated badges;

  c. The systemic practice of conducting *ex parte* hearings without proper notice to parents in juvenile protection cases;

  d. The systemic practice of withholding exculpatory and medical evidence from parents and the courts in juvenile proceedings;

  e. The systemic failure to investigate reports of abuse in state custody (Plaintiff filed reports in January 1994 and March 1994 regarding abuse of his children in foster care, both of which DCFS declined to formally investigate);

  f. The deliberate indifference of COPA in closing the police impersonation complaint (CR 20230001210) in just twelve days without meaningful investigation.

107. These policies and customs were so widespread and well-established as to constitute the official policy of the municipal Defendants, or alternatively, were ratified by final policymakers with knowledge of the constitutional violations.

20

## COUNT VII:
### Conspiracy to Deprive Civil Rights (42 U.S.C. § 1985(3))
*(Against All Individual Defendants)*

108. Plaintiff incorporates all preceding paragraphs.

109. The individual Defendants conspired among themselves and with others to deprive Plaintiff and his children of their constitutional rights, specifically their rights to familial association, due process, and freedom from unreasonable seizure.

110. The conspiracy involved: (a) the fabrication of police authority to execute the seizure; (b) the concealment of the quashed warrants; (c) the withholding of medical evidence of abuse in custody; (d) the placement of children in a known-dangerous facility; and (e) the obstruction of Plaintiff's efforts to reunify with his children over a period of sixteen years.

111. Overt acts in furtherance of this conspiracy include the signing of arrest reports with a non-existent badge number, the listing of Defendant Judkins as "FRIEND" on hospital records, and the refusal of the Public Guardian's Office to disclose the July 27, 1993 lawsuit.

# DAMAGES

112. As a direct and proximate result of the Defendants' constitutional violations, Plaintiff and his children have suffered the following damages:

a. **Physical harm**: The vaginal and rectal penetration of Princess Nicholas (age 6) on July 27, 1993; the aggravated criminal sexual abuse of Wendy Nicholas in foster care; physical abuse documented in foster care (Christopher Nicholas with burns, January 1994); and the death of Jerry Nicholas Jr.

b. **Emotional and psychological harm**: Severe emotional distress, parental alienation, loss of childhood, loss of familial bonds, post-traumatic stress, and the lifelong psychological consequences of sexual assault suffered as children in state custody.

21

c. **Loss of familial association**: Sixteen years of complete separation between Plaintiff and his children, with no contact permitted.

d. **Economic harm**: Loss of income, legal fees, and costs incurred in the decades-long effort to reunify with his children and seek accountability.

e. **Loss of life**: The death of Jerry Nicholas Jr., whose life trajectory was irrevocably altered by his removal from a stable home at age six and placement into a system that failed to protect him.

f. **Disrupted parent-child relationship**: Published forensic guidelines recognize that the involuntary disruption of the parent-child relationship constitutes irreparable injury compensable at no less than $600 per hour of separation. *See* Best Interests of the Child Institute, "Disrupted Parent-Child Relationship (DPCR) and Monetary Compensation for Emotional Suffering-2023 Guideline and Statement,' *J. Forensic Psy, and Child Custody* (2023). Applied to this case, six children separated for an average of fourteen years, the compensable emotional suffering alone exceeds $50,000,000 under this peer reviewed framework.

113. The total damages in the case are conservatively estimated to exceed $50,000,000 in compensatory damages alone, exclusive of punitive damages, attorneys' fees, and interest. This figure reflects: (a) two confirmed sexual assaults of minor children in state custody; (b) the unsolved death of a third child; (c) sixteen years of complete family separation for six children; (d) the use of fabricated police authority; € the execution of a judicially quashed warrant; (f) thirty-one years of concealed evidence; and (g) the denial of legal representation at the termination trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff JERRY NICHOLAS, SR., individually and as parent and

next friend of his children, respectfully requests that this Court enter judgment in his favor

and against Defendants, and award the following relief:

A. Compensatory damages in an amount to be determined by a jury, but estimated to exceed **$50,000,000** (Fifty Million Dollars), reflecting the extraordinary duration of the family separation (sixteen years), the sexual assault of two children in state custody, the death of a third child, the fabrication of police authority, and the thirty-on years of concealed evidence;

B. Punitive damages against the individual Defendants in an amount no less than three times the compensatory award, sufficient to punish and deter the egregious, willful, and wanton misconduct alleged herein, including the use of a fabricated police badge, the execution of a quashed warrant, the concealment of a child's sexual assault for thirty-one years, and the deliberate obstruction of a father's access to the courts;

C. A declaration that the Defendants violated Plaintiff's rights under the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution;

D. An order requiring the Cook County Public Guardian's Office to disclose the lawsuit filed on behalf of the Nicholas children on July 27, 1993, and all related records;

E. An order requiring DCFS to produce all records related to the investigation and placement of the Nicholas children, including all records from 810 W. Montrose, Grant Hospital, and all foster care placements;

F. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

G. Pre-judgment and post-judgment interest as allowed by law;

H. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

23

/s/Walter A. Bernard, Esquire
Walter A. Bernard, Esquire


Walter A. Bernard, Esquire
LAW OFFICES OF WALTER A BERNARD
840 1st Ave Suite 400
King of Prussia, PA 19406
(610) 466- 5480
walt@waltbernardlaw.com
*Counsel for Plaintiff Jerry Nicholas, Sr.*

Crytal Ione, Esquire
LAW OFFICES OF WALTER A BERNARD
840 1st Ave Suite 400
King of Prussia, PA 19406
(610) 466- 5480
crystal@waltbernardlaw.com
*Counsel for Plaintiff Jerry Nicholas, Sr.*



Dated: July 1, 2026

**VERIFICATION**

I, JERRY NICHOLAS, SR., declare under penalty of perjury that I have read the foregoing

Verified Complaint and that the facts stated therein are true and correct to the best of my

knowledge, information, and belief.

/s/ Jerry Nicholas, Sr.
JERRY NICHOLAS, SR.

Date:   July 1, 2026